The panel will hear the final case this morning, which is Case 17-6247, Comanche Nation of Oklahoma v. Zinke. Counsel, we're ready to hear you. Thank you, Your Honor. I'm presiding. Judge Locero, members of the panel, may it please the Court. My name is Richard Groner here on behalf of the Comanche Nation. I'd like to take a second to recognize a few of the tribal members from Comanche Nation here today. We have Shannon Nagel, we have Jared Ellis, we have Jimmy Arterbury, we have a tribal judge, Judge Simon, and Jimmy Arterbury shows up prominently in the pleadings. We also have Steve Mullins, who wrote the letter on behalf of the state opposing this specific casino we are here about today. Thank you, everyone. Welcome, of course, and always happy to have the parties hear their case. Your Honor, we're here on an issue of overwhelming importance to the Comanche Nation. The vast majority of the funds that it uses to support its tribal programs, its elderly programs, to fund its court system, its government programs, comes from the casino and the enterprises that are being affected by this competition. It's not only an economic issue, however, it's also an historical, cultural, and environmental issue that we have alleged in our complaint and our pleadings. Two issues are here today. Number one, it's about a denial of a preliminary injunction. We requested, prior to opening, an injunction which was not granted. We also requested, in the absence of an injunction, that the issues be remanded to the Interior Department for further review so that they could follow the rules and apply the procedures properly. There are two issues here before the Court today. The one is whether or not this was a proper application of an exception to the post-1988 prohibition on after-acquired properties for gaming. We believe it was because it was an off-reservation acquisition that required government approval. The second issue is, we believe that Interior failed to do its duty to take a hard look and oversee the Chickasaw Agency Environmental Services Agency, and as a result, they blew past numerous requirements, including notice of... Are those necessarily implicated solely by the taking, or do you have to wait before there's an actual proposed project and physical construction to trigger the requirements under NEPA? We believe that... As an example, for example, let's say that property is acquired to construct a reservoir. But the permitting has not begun, the applications for permit have not begun. Is the mere acquisition of the property enough to trigger the application of the statute, or do parties have to await the application for licenses and permits and actually submit plans of construction for review before it's even an issue? That's a very good question. The Supreme Court answered that in Patch Act, when the government, and they continue to put in their briefs here, that one, taking land in trust is separate from the determination of whether or not you can game on it. The Supreme Court said no, it's one decision, everything happened in one day. So our answer to that would be is that they have to be truthful about what they're going to do with this property, and they have to present a proposal. This specific environmental assessment... My question is, is the presentation of a proposal a sine qua non to the requirements of the statute? We believe it is, when it's specifically at least for gaming, yes. Because they have to do an environmental assessment if there's no change in use. And we pointed out where dozens of these happens without any environmental assessment. And that environmental assessment has to be accurate, and there has to be plans for the project included. I didn't want to take you off your argument, but it just occurred to me that... And I would like to reserve a couple minutes of my time at the end, if possible, for rebuttal. But the issue here is, is we believe this was an off-reservation acquisition that required governor's approval. There's no question but that this land previously had been within the boundaries of a reservation. That's correct, but that's not the end of the... I understand that's not the end of the discussion, but there's no dispute among the parties about that. And there's really no other factual disputes here. Can I just ask about framing your argument? Are you challenging the regulation itself because it doesn't require Chickasaw Nation to have governmental jurisdiction over the land before it's taken into trust? Or are you arguing that the secretary improperly applied Section 151.3 because it requires that the land be under tribal jurisdiction? I'm a little unclear on whether it's a challenge to the regulation itself or it's a challenge to the application of the regulation. It's a challenge to the application of the regulation. No one needs to look further than the claims. The claims said it's arbitrary and capricious application of the law. And no one needs to look no further than the prayer for relief, which specifically applies to Terrell. This claim was found... Where does the regulation say then that the land must be under governmental jurisdiction, tribal government jurisdiction before it's taken into trust? The regulation in 2008 does not say that. The regulation in 2006, which was publicly commented upon, did. The regulation in 2008 was never commented upon. However, the regulation in 2008 mirrors the reservation regulation, which was published the same time for those 292, 25 CFR 292 regulations, and which clearly requires jurisdiction. Which one applies? Which one was applied here? Which version that was applied? The version of the regulation that was applied here, I believe, was 2008 292, the former reservation version, the 2008 version. But our position is, is that version has to be applied in context of the statute. And because it was treated... Well, that sounds... Again, that sounds more like a challenge to the regulation then. Well... Because if the regulation doesn't have the requirement in the text of the regulation, I'm not sure how you can make the argument that it was misapplied. It seems to me you've got to argue this contextual comment, whatever, and you're attacking the regulation itself. We're not attacking the regulation. Well, then where's the language in the regulation that supports your position? The language in the regulation is, is that it, is that the regulation is exactly the same as reservation. And reservation doesn't have jurisdiction in it either, yet both of them are applied to require jurisdiction when acquiring land. And that's why they were treated equally in the statute, is reservation is defined under 151.2 as having jurisdiction. And so, our position... But 151.2 defines reservation to include land in Oklahoma constituting the former reservation. That's correct. And you said at the outset that this is former reservation land. No, we didn't say it was former reservation land. We say that... Well, what... We said it's in the batteries. Didn't Justice Terrell answer you that question? Yes, but that's not the end of the analysis. Well, then did you not answer his question completely? Because I heard, I thought I heard you say it is, it is what, the land we're talking about here, Terrell Parcel, was part of the Chickasaw Nation former reservation, is that not true? No, it was part of the Chickasaw Nation boundaries, last boundaries. That's different than the legal context of former reservation, which requires jurisdiction. And if I can give a little context, Your Honor. Please. 2703 of IGRA was passed and created a new category called Indian lands, which was supposed to be a subset of Indian country. Indian lands was both a reservation and Indian country. Trust restricted for a tribe or member in governmental authority. It was not reservation or. So it was created as a category because they wanted... Well, I thought one of the questions was whether the reservation, the Chickasaw Nation reservation had been disestablished. That's a follow-up question. That's the Murphy question. You would never get to that question if it was never reservation, right? I mean, in order to disestablish the reservation, there had to be something in the first instance. That's correct. But after the Murphy decision, it became relevant as to whether or not it was still a reservation. And if it's still a reservation, then the question becomes, is it an Indian country reservation? And the United States put in its own amicus brief in that case that even if it's at page 15, even if it's somehow an Indian country reservation, I mean, a reservation is not Indian country because they do not exercise governmental authority over that reservation. And so former reservation and reservation are two separate issues. But the point is that IGRU was creating a subset of Indian lands because they didn't want casinos everywhere. They wanted it to be where Indians lived on a reservation and trust restricted for a tribe member. And Oklahoma, the only category that met that definition on October 17, 1988, under the Cheyenne-Arapaho v. State of Oklahoma case in 1980, was land and trust for a tribe. It was considered a de facto reservation. Now allotments, which we believe What about Section CFR 292.2? Yes. What about that? That is the gaming application of the definition of former reservation. We believe that has to be applied consistent with the statute, which makes it be treated the same as a reservation. And since a reservation required there to be jurisdiction to acquire under this exception, because remember, they can acquire as off-reservation. The governor can approve all the time under a separate context. But we believe in order to follow the policy to acquire, they had to have jurisdiction. That meant that it was restricted. Maybe the panel has taken you off your argument. So what is your argument? Our argument is that the only thing that they could have acquired Just slowly so that I can absorb it here. The argument is that the only thing that could have been acquired post 1988 in Oklahoma under this exception was an allotment. Because an allotment was not a reservation under 2703. And because it was an allotment, it therefore became eligible to be a former reservation. They could get this property in trust. They could have built these five dozen casinos that they built separate with governor approval. But what they couldn't do is declare the whole state effectively a reservation by claiming it was a former reservation and allow 120 casinos to be built, half of which were acquired post 1988, none of which went through the gaming process or the NEPA process. And that's the issue, is that it was to be restricted because there wasn't supposed to be a land rush after 1988 for new casino sites. So they created these exceptions where jurisdiction had previously existed, but where they weren't reservations because they weren't owned by the tribe. That's the issue. And so allotments weren't eligible to be Indian lands because they weren't a reservation. So your argument is that after acquired land as an allotment is not subject, but that's not the issue as you've presented it here, is not a reservation for purposes of the Gaming Act. That's correct. The allotment is not a reservation because a Mustang case in Oklahoma said they're Indian countries, 1151C, but they are not, quote, a reservation. The only thing that was a reservation was land that was in trust or restricted status for the tribe as of the date of passage of the act because China Rappo v. State of Oklahoma. Is that a matter of first impression? What? Sorry. It's your point. No, it's not. There's two cases and I just cited them. China Rappo v. State of Oklahoma says if it's in trust for a tribe, it's a de facto reservation. And Mustang Fuel Corporation v. Harrison says it's an allotment, it's not a reservation, but it's Indian country. Thank you. We'll let you allow to reserve the rest of your time as requested. Okay. Wow. Thank you. Counsel, can you shed some light on this? I'll try. May it please the court and good morning. Anna Katselas for the United States. As a preliminary matter, Comanche Nation is here seeking a preliminary injunction, which is extraordinary relief in the normal course, and the injunction that it seeks is specifically disfavored because it would require the rescission of a trust acquisition and require the Secretary of Interior to take that action. And Comanche seeks this because it fears that a gaming operation operated by the Chickasaw will compete with its own gaming operation. So Comanche faces a very high burden and the district court correctly determined that Comanche had not made a clear showing to obtain it. Judge Matheson, like you, we've struggled with what exactly the argument is. And you know, we think it's one of two things. One, that the Secretary misapplied EGRA's Oklahoma exception and the regulations implementing it to the Terrell site, or that the regulations themselves are invalid. And I'll take those two points in turn. I've heard my friend, my opposing counsel, talk about EGRA 2703 and allotments this morning. None of that is presented in the brief and it's waived. They seem to be making an argument about Section 2703, Indian lands. That's a different provision that has not been briefed or raised. So we'll take the arguments that were raised in the brief. Judge Matheson, to the extent they are challenging the regulations, which it does sound like they are, the challenge is time barred. Well, counsel, to clarify, but I heard him say it was a challenge to how the regulation was applied. But if you'd like to address... No, I think I'm just... That's fine, Your Honor. I think I heard that as well. It seems that they are abandoning that. You know, that they are not challenging the regulations just to cover all bases. But to the issue that they have said that they are challenging the application of the statute and regulations to the Terrell site, there is absolutely no question that the statute and regulations were correctly applied. There's no even need for a deference analysis here because the statute and the regulations are clear as day that governmental jurisdiction is not required. There are multiple reasons that their argument is wrong. Well, not required for what? Let me break that down. First and foremost, EGRA governs the permissibility of gaming on Indian lands. It does not restrict. It does not govern at all the Secretary's trust acquisition authority. They are separate statutes. The Secretary often makes these determinations at the same time, and it did that in this case. But they are separate analyses. The Indian Reorganization Act governs trust acquisition. It confers very broad discretion on the Secretary to acquire lands and trust within or without existing reservations. So at a first point, Comanche is barking up the wrong statute. It just isn't relevant here to the question of trust acquisition. Now, going to the permissibility of gaming on the lands. Before you get to that, when the Secretary decides to take land into trust, does that bring the land under tribal governmental jurisdiction? Yes. There's no question that trust status is sufficient for governmental jurisdiction. That's well established in the law. There's just no dispute about that. We don't understand that Comanche disputes that. So to clarify, as the statute operates, gaming can't occur on lands within the Oklahoma exception. There is governmental jurisdiction, because the exception only applies to trust lands. So upon the trust acquisition, there is the governmental jurisdiction. So there is governmental jurisdiction for gaming, before any gaming occurs. That's how it operates. So that's sort of another reason why it doesn't make any sense that there would be a governmental jurisdiction requirement here, because the statutory provision on which Comanche relies only applies to trust lands. There's jurisdiction already. The exception is limited to trust lands. Prior to the acquisition of the land, there was no jurisdiction. Well, that's a complicated matter. Judge Matheson, there's a lot of complication in the law over what is Indian country, etc. So this is, again, there's former reservation. This is a former reservation of the Chickasaw tribe. There's no dispute here that this is within the boundaries of the Chickasaw reservation. So upon the former reservation, there's no question that it's a former reservation. There's no factual dispute about whether this was their reservation. There's also no dispute that it meets the definition of former reservation that the Secretary promulgated that has the force of law. This is, again, there's no governmental jurisdiction requirement. Yes, the Secretary considered it in a proposed rule in 2006. It did not adopt it. Comanche seems to be arguing that they should have applied a definition that was never adopted rather than the one that has the force of law. It doesn't make any sense. So there's no question that this meets the definition of former reservation and, therefore, that gaming is permissible on this land under EGRA's exception. So, again, the fact that the Secretary considered a different definition, this really has no relevance to the court's analysis in the case. It's not an inconsistency. There was never another definition promulgated. There was no change in position because there was never another definition actually promulgated. And, of course, even if there were, that's not a basis for a lesser standard of deference. Unless under FCC FUFOX, there are two requirements that are met. One is that the new definition rests on factual findings that contradict the first position, the original position. And the second is that the new definition upends serious reliance interests. So we're not here. Again, I think you know, Your Honor, it's very clear here that the statute and the regulation were correctly applied. There's just no question. I mean, it's just absolutely plain that this meets the definition of a former reservation under the statute and under the regulations that were actually applied. So there's no misapplication of the law. Comanche has abandoned its argument that it's challenging the regulations. And in any event, you know, the time to challenge those has long passed, as the District Court correctly found. You know, on the NEPA point, you know, we don't . . . Judge Lucero, nothing further had to happen for NEPA here. But, you know, Comanche didn't actually argue any NEPA argument in its motion for a preliminary injunction. This is waived. They didn't raise . . . Are there actual plans for the construction of a facility? The facility is constructed. It's done. Oh, it's done. It's done. So why are we here? Is it moot? It's moot? It's not. It wouldn't be moot. We don't think that it would be moot, Your Honor. I mean, the court could . . . You know, there's still a live . . . You could still challenge the trust acquisition. You could still remand for the secretary to consider it. We don't think that the construction . . . Was there a NEPA compliance prior to the construction? Yes, there was an environmental assessment performed and a finding of no significant impact. There's an EA. We attached all of this to our . . . You know, that is all in the record. You know, if Comanche opted to, you know, seek a preliminary injunction and then seek an appeal from a preliminary injunction, but had they not, had we just gone to the merits in the district court, the full administrative record . . . Can I just . . . I'm really not clear on your response to the mootness question. Maybe the case as a whole, there's something left to argue, but is the preliminary injunction issue moot? Weren't they . . . What were they asking for the court to do on preliminary injunction? Well, they're seeking . . . If the casino is built and open and running, was there any . . . Is there any relief to be had on a preliminary injunction? Well, Your Honor, I think that there still could be because I think that, you know, they're seeking a rescission of the trust acquisition. Now, we think that they're . . . You know, one, we think they're in the wrong statute because EGRA doesn't govern that, but we think that that could be, you know . . . There's a lot of thinking. What's your best case? For . . . For the proposition that once the casino is actually built, that a request for preliminary injunction remains ripe. I mean, it just seems to me like a non sequitur. Well, I don't have a case at hand on that point, Your Honor. I'm sorry. Thank you. Could I just . . . On the NEPA, you brief several points, including whether the analysis was done properly, but don't you also make an argument about standing? Zone of interest. This report is . . . Let's back up. Does the Comanche Nation have Article III standing to bring its NEPA argument? We have not contested that. We have not contested Article III standing. We've contested what used to be called prudential standing. The Supreme Court has called that a misnomer. We refer to it now as zone of interest. We've not made an Article III . . . So, this is the Lexmark case. Yes, Lexmark. This is a Lexmark case, but we think that, you know, it is very clear that they have only asserted economic harm. You know, they have not asserted any interest in the environment or natural resources of the Terrell site. They have not asserted that they will be harmed by the construction . . . that those interests will be harmed by the construction of the site. And there are many cases that are clear that this type of harm, standing alone, is insufficient because it's not within . . . As our colleague, Judge Anderson, used to say, we're not a debating society. I still come back to mootness. I don't understand what we're supposed to resolve. I mean, the issue here isn't whether competition should be allowed. This isn't some kind of an antitrust case. I still don't understand why the case isn't moot. And I'm sorry, I don't have a more robust answer for you, but it's our understanding that the trust acquisition could still be . . . they are seeking, you know, rescission of it. And it's our understanding that a court can still rescind it even once . . . I mean, the completion of . . . Yeah, but those kind of issues aren't preliminary injunction issues. Those are kind of merits issues to the . . . or some kind of a permanent injunction. I don't know how we would characterize the relief sought. Well, I mean, perhaps we should have given that a bit more . . . You know, it's our understanding that it doesn't moot the case. And, you know, in my understanding, it wouldn't moot that necessarily, but perhaps I didn't give that sufficient . . . we didn't give that sufficient thought. But I think, you know, that . . .  it's just so clear that they are, you know, flatly wrong on the merits. The district court was clearly correct. If there are no further questions, I'll . . . No questions. I'll end with a request that the district court's order be affirmed. Thank you. Counsel? Thank you, Your Honor. With respect to the remedy, we requested that there be an injunction against the opening. The opening has occurred subsequent thereto. We also requested, however, that it be remanded to the BIA for further proceedings, in light of Murphy, and in light of the fact that we don't believe that they followed the environmental rules when they did their NEPA document. What would the further proceedings be about? The further proceedings would be . . . Canceling the acquisition, or what? If it was potential . . . if it was . . . acquired in violation, yes. I point to the Patch Act decision. The government, again, there said that it's all done on the same day. It's one thing. It's a land use committee. They also said that the government should be held to the full letter of the law if they violated any other federal statute related to federal lands. That was an 8-0 decision by Kagan. We think that's important, that if they blew by . . . Look, this is against the backdrop of 120 casinos in the state. Sixty of them were acquired under this exception, but none of them were granted an exemption for this exception. And all of them were granted categorical exclusions under NEPA. That's in the record. Forty of those are in the record. This one, we believe, is another misrepresentation because it's now exponentially bigger than it was claimed to be in the environmental assessment. And they didn't even build the lagoons onsite. They built them offsite, closer to the river, so they can expand it into a destination resort. So you have a situation here where there's dozens and dozens of casinos in the state that never went through the process. Against the backdrop of Patch Act, because it could finally be challenged, they pretend to follow the process, but with respect to environmental reviews, which she points out, they ceded the entire responsibility to the local agency of doing a hard look. There was no consultation to the tribe. We got no real notice. They published it in their hometown and in Texas. So we got no real notice at the same time they were doing the same EAs all over the Internet. They were required to consult on trust issues. That's economic. Anything that affected our trust issues, which this was in the zone of protected interest because they agree it was within the 45-mile halo in the compact. They had obligations to the Historic Preservation Act. They had obligations to consult on NAGPRA. They did none of this. There was no meaningful notice. The EA misrepresented the true intent. They didn't even update the assessment on the day it was taken into trust as they were told that the EA was outdated, the initial site assessment. They didn't even update that. It's in the Record of Decision and took it into trust anyway. Then there was no prompt notice of the acquisition within 30 days. They started building the casino four months later and didn't put it in the Federal Register until 60 days later. We were behind the ball. We filed 29 days later. We tried to get the injunction. It was unsuccessful, but at the same time we asked the court for a remand to look at all these issues, especially in light of Murphy and in light of the fact that we believe it was an off-reservation acquisition that could only occur with the approval of the governor because their interpretation of the statute, again, turns the entire state into a reservation. But back to Judge McKay's question. The relief you seek of us is this time is what? No. The relief we sought if we couldn't get the injunction was a remand back to the agency so that the agency could re-look at the issue. Remember, this was issued on the last day of an administration. Issued back to the agency so they could look at the issues of whether or not they followed the environmental process and whether or not in light of the new case and what we've alleged as to whether or not we believe it had to have governor approval if it wasn't an allotment. To see back to the agency to see if that was the position. When they accepted the 2008 regulation, we're not challenging that, but remember that was never published for comment. Thank you, counsel. The case is submitted. Counsel are excused. And we thank you for your appearance.